# PENNSYLVANIA RAILROAD COMPANY *v.* W. F. JACOBY & COMPANY.

## ON CERTIFICATE FROM AND CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 22.   Argued October 20, 1915; affirmed by divided court November 15, 1915; restored to docket for reargument December 20, 1915; reargued October 23, 24, 1916.—Decided December 4, 1916.

In an action against a carrier to enforce an award made by the Interstate Commerce Commission for damages arising from discrimination in allotments of coal cars, plaintiffs, to prove the damage suffered, relied on the *prima facie* case made by the findings and orders of the Commission; the defendant introduced a tabulated statement of car allotments and percentages which had been introduced in evidence before the Commission by the plaintiffs, and which, when compared with the findings, justified most strongly, if it did not compel, a deduction that, in fixing the damages awarded, the Commission, by misapplying percentages given in the statement, had followed a legally erroneous method of computation and so had arrived at a legally erroneous result.

*Held:* (1) That the tabulated statement, and oral testimony comparing it mathematically with figures stated in the findings, were competent evidence, tending to overcome the *prima facie* force of the Commission's orders.

(2) That the defendant was entitled to a specific instruction to the effect that, if the jury found such erroneous method of computation was the one actually employed by the Commission, the award was erroneous and the plaintiffs not entitled to recover.

(3) That, under the circumstances, the fact that the evidence before the Commission was not all before the court would not justify a controlling presumption that the award was properly arrived at on competent proofs.

(4) That the error was not cured by divers general instructions which are stated in the opinion.

In computing damages resulting from discrimination by a carrier in car allotments, it is error to assume that the complaining shipper should have received cars in the same ratio to shipping requirements

as was allowed his favored competitor in the making of the discrimination.

The award should be based on the damages actually resulting from the discrimination.

THE case is stated in the opinion.

*Mr. Francis I. Gowen* and *Mr. John G. Johnson,* with whom *Mr. F. D. McKenney* was on the briefs, for Pennsylvania Railroad Co.

*Mr. Wm. A. Glasgow, Jr.,* for Jacoby & Co.

MR. JUSTICE DAY delivered the opinion of the court.

Jacoby & Company, hereinafter called the plaintiffs, owned a coal mine known as Falcon No. 2 in the Clearfield District served by the Tyrone Division of the lines of the Pennsylvania Railroad Company, hereinafter called the Company, and shipped coal from their mine in interstate commerce. In June, 1907, the plaintiffs made complaint before the Interstate Commerce Commission of discriminatory practices against them in the distribution of coal cars, in violation of the Act to Regulate Commerce. The Commission made findings, among others, that Falcon No. 2 was not placed on an equal footing with the mines of the Berwind-White Coal Company in the matter of the distribution of the defendant's available coal car equipment during the period of the action. It also found a special allotment of 500 cars daily to the Berwind-White Company to be an undue preference and discrimination, and on March 7th, 1910, the Commission made an order, finding that the complainants had been unduly discriminated against, and set forth that it appeared "that it is and has been the defendant's rule, regulation and practice, in distributing coal cars among the various coal operators on its lines for interstate shipments during percentage

periods, to deduct the capacity in tons of foreign railway fuel cars, private cars, and system fuel cars, in the record herein referred to as 'assigned cars,' from the rated capacity in tons of the particular mine receiving such cars and to regard the remainder as the rated capacity of that mine in the distribution of all 'unassigned' cars." The Commission ordered "That the said rule, regulation and practice of the defendant in that behalf unduly discriminates against the complainants and other coal operators similarly situated and is in violation of the third section of the Act to Regulate Commerce" and "That the defendant be, and it is hereby, notified and required, on or before the 1st day of November, 1910, to cease and desist from said practice and to abstain from maintaining and enforcing its present rules and regulations in that regard, and to cease and desist from any practice and to abstain from maintaining any rule or regulation that does not require it to count all such assigned cars against the regular rated capacity of the particular mine or mines receiving such cars in the same manner and to the same extent and on the same basis as unassigned cars are counted against the rated capacity of the mines receiving them."

At the same time, the Commission ordered that the question of damages sustained by the plaintiffs in respect to the matters and things in the report found to be discriminatory be deferred pending further argument. See also 19 I. C. C. 392, where the decision is reported. In that case the Commission referred to its report filed the same day in the case of *Hillsdale Coal & Coke Company* v. *Pennsylvania Railroad Company,* 19 I. C. C. 356, in which the discriminatory character of the rules of car distribution of the Company is fully discussed (page 364) and the rules are condemned, largely because of the advantages given to the owners of private cars unless the same shall be counted against the distributive share of the mine receiving them. See also the discussion of these rulings in

*Pennsylvania Railroad Company* v. *Clark Coal Company*, 238 U. S. 456.

On March 11, 1912, the Commission made a further report, in which it found as follows:

"We find that by reason of the discriminations ascertained and set forth in our report in *Jacoby* v. *P. R. R. Co.*, 19 I. C. C. 392, the complainants were damaged to the extent of $21,094.39, which they are entitled to recover with interest from June 28, 1907.

"The claimants here demand $51,950.49. The award above made we base upon evidence adduced of record from which we find:

"(a) That the fair rating of the mine for the time in question, as fixed by the defendant and not objected to by the complainants, was 450 tons per day.

"(b) That during the period from April, 1904, to March 31, 1905, the mine was operated 275 days; and that during the second period named on the exhibits, from April 1 to October 18, 1905, it was operated 138¼ days.

"(c) That during the first of these periods 38,714.23 tons were actually shipped from Falcon No. 2, and during the second period 17,973.88 tons; that if the complainants had received their fair share of the cars available for distribution the mine would have made additional interstate shipments and sales to the extent of 35,412.02 tons and 19,104.77 tons during the respective periods.

"(d) That the average selling price of the complainants' product for the first period was $1.212 per ton, and in the second period $1.1670; that the cost of production, based on economical operation of the mine with a fair car supply, would have been 92 cents during the entire period of the action; and that the profit during the first period would therefore have been 29.2 cents and during the second period 24.7 cents per ton. This measures the loss on the tonnage which the complainant was unable to ship.

"(e) That the actual cost of production is shown by the record as $1.016 per ton during the first period and $1.049 per ton during the second period, making an excess of 9.6 cents and 12.9 cents for the respective periods in the actual cost of production under the conditions obtaining, as compared with what would have been the cost based on a fair car supply as heretofore stated. This is the basis adopted for computing the loss sustained by these complainants in diminished profits for the coal actually shipped during the period in question."

On March 11th, 1912, the Commission made a reparation order in favor of the plaintiffs, confirming its former orders, findings and conclusions, and ordering that the Company should pay to the plaintiffs on or before the first day of June, 1912, the sum of $21,094.39, with interest thereon at the rate of six per cent. per annum from June 28th, 1907, as reparation for defendant's discrimination in distribution of coal cars, which discrimination had been found by the Commission to be unlawful and unjust. Upon these orders of the Commission, suit was brought in the District Court of the United States for the Eastern District of Pennsylvania, on July 19th, 1912, the action being based upon § 16 of the Act to Regulate Commerce, 34 Stat. 590. The case was heard in the District Court, and resulted in a verdict for the amount awarded by the Commission, with interest thereon. On the case going to the Circuit Court of Appeals, that court certified certain questions to this court, and upon writ of certiorari the whole record was brought here.

The case was argued before this court at the October term, 1915. At that term the judgment below was affirmed, with costs, by a divided court. Afterwards, and at the same term, a petition for rehearing was granted and the former judgment set aside, and the case restored to the docket for reargument. 239 U. S. 631.

At the trial in the District Court the plaintiffs offered

no other testimony as to the amount of damages sustained by them than that contained in the orders of the Commission, before recited. Section 16 of the Act makes the findings and orders of the Commission *prima facie* evidence of the facts therein stated, and it may be conceded that if no testimony was offered in the case to overcome the *prima facie* case thus made, the orders of the Commission would be controlling and determine the amount of recovery. The *prima facie* character of the findings of fact and award of damages by the Commission was established upon full consideration of the subject in *Meeker* v. *Lehigh Valley R. R. Co.*, 236 U. S. 412, 426–431, and second *Meeker Case*, 236 U. S. 434. This court said in *Mills* v. *Lehigh Valley Railroad Co.*, 238 U. S. 473, 481, after quoting from the *Meeker Cases, supra*, "The statute was not concerned with mere forms of expression and in view of the decision that a finding of the ultimate fact of the amount of damage is enough to give the order of the Commission effect as *prima facie* evidence, we think that the court did not err in its ruling. The statutory provision merely established a rule of evidence. It leaves every opportunity to the defendant to contest the claim."

In order to meet the *prima facie* case made by the plaintiffs upon the orders of the Commission in awarding damages, in the course of the testimony the Company put in evidence certain sheets, which were offered in evidence before the Commission by the plaintiffs, in the hearing before that body, known as Exhibit No. 10. These sheets were entitled "Detailed statement showing discrimination in favor of other mines and against Falcon No. 2 [the mine of the plaintiffs] from April 1, 1904, to April 1, 1905," and "from April 1, 1905, to October 15, 1905," respectively, these being the periods for which recovery was sought in this case by the plaintiffs. These sheets undertook to show the percentage of cars awarded to certain preferred companies by the Railroad Company, as com-

pared to those awarded to the plaintiffs for use in their mine during the period stated. They were intended to show that the favored companies received cars during the first period to the extent of 59.9% of their mine ratings, and during the second 59.6% of their mine ratings, which percentages were much larger than the plaintiffs received for their mine during the like periods. In other words, it was thus sought to establish that the favored mines received, not their just proportion of the distributable cars, but a much larger, and highly discriminatory, share when compared with the allotment made to the plaintiffs. It is the contention of the Company that it is demonstrable from this record that these tables showing the percentages awarded to favored companies were made the basis of the Commission's award of damages.

We have already seen from the orders of the Commission, above recited, the manner in which it made its award and reached its conclusion as to the amount recoverable by the plaintiffs. At the trial in the District Court, the Company placed a witness upon the stand, who testified as follows:

"Q. Referring to the order which has been put in evidence made by the Interstate Commerce Commission, finding a certain amount as due Jacoby & Company, will you please say whether you have taken the daily rating fixed by the Commission as proper, namely, 450 tons per day, and multiply that by 275 days, the days which the Commission found the plaintiff's mine would have been able to work in the year ending March 31, 1905, and tell us what the aggregate number of tons is, based upon those two figures?

"A. 123,750 tons.

"Q. In that same order the Commission has found that the plaintiff shipped in that period 38,714.23 tons and that they ought to have received cars which would have enabled them to ship 35,412.02 tons additional. If they had made

those additional shipments what would the total volume of shipments have been?

"A. 74,126.25 tons.

"Q. What percentage of the aggregate capacity of the mine, based upon 450 tons per day and 275 days, are the aggregate shipments which would have been made, which you have just spoken of?

"A. 59.9 per cent.

"Q. Coming to the second period of the action, the Commission found that 450 tons per day was a proper rating for the mine and that the mine would have been capable of working 138¼ days. What, on that basis, is the aggregate capacity of the mine in that period?

"A. 62,212.51 tons.

"Q. In their order the Commission found that in that period the mine had shipped 17,973.88 tons and that it should have received cars which would have enabled it to ship 19,104.77 tons additional. If it had made those additional shipments, what would have been the total shipments in that period?

"A. 37,078.65 tons.

"Q. And what percentage is that of the aggregate rated capacity based on 450 tons a day and 138¼ days?

"A. 59.6."

This testimony was competent in order to meet the plaintiffs' case based on the orders of the Commission, and from it we think the conclusion is ·inevitable that the Commission may have used the percentages of 59.9% and 59.6% respectively. in reaching the amount of damages awarded to the complainant. If so, the recovery was permitted, not upon the basis of damages sustained by reason of the illegal discrimination practiced against the plaintiffs as found by the Commission, but upon the basis that they were entitled to receive cars equal in ratio to those illegally and preferentially given to the certain favored companies named in the tables. The effect of

the enforcement of such rule, would be, not to give the shipper the damages which he actually suffered, but would base the recovery upon a rule which is condemned as to others, because of its discrimination in their favor,—a result manifestly not intended by the Act of Congress.

The testimony being in the condition which we have stated, and the plaintiffs having offered no testimony to show the amount of damages sustained other than that contained in the order made by the Commission, the Company made certain definite requests to charge, which were refused. In one of them, they requested a peremptory instruction in favor of the Company upon the ground that as the award of the Interstate Commerce Commission was based upon the conclusion that in the year ending April 1st, 1905, the plaintiffs should have received cars equal in capacity to 59.9% of the aggregate of their daily mine rating for 275 days, and in the period between April 1st and October 18th, 1905, cars equal in capacity to 59.6% of their daily mine rating for 138¼ days, it was apparent that this conclusion of the Commission was based upon the evidence presented by the plaintiffs that the aggregate of the cars placed by the defendant at certain mines selected for the purpose of comparison from those comprised in the region in which the plaintiffs' mine was located, had been equal in the earlier period to 59.9% and in the later period 59.6% of the aggregate ratings of these selected mines. If the court should refuse to charge as above requested, the court was requested to instruct the jury as follows:

"8. If the jury should find that the conclusion of the Interstate Commerce Commission that the plaintiffs in the year ending April 1, 1905, should have received cars equal in capacity to 59.9% of the aggregate of their daily mine ratings, and in the period between April 1, and October 18, 1905, cars equal in capacity to 59.6% of the aggregate of their daily mine ratings, was reached or arrived

at because of the evidence presented by the plaintiffs that the aggregate of the cars placed by the defendant at certain mines selected for the purpose of comparison from those comprised in the region in which the plaintiffs' mine was located had been equal in the earlier period to 59.9% and in the later period to 59.6% of the aggregate ratings of these selected mines, the basis for the Commission's conclusion and award was an erroneous one, and the plaintiffs consequently are not entitled to recover."

In view of the testimony as we have already stated it, we think the Company was entitled to have this eighth request given in charge to the jury. Nor do we think this refusal was cured by the charge that the finding of the Commission was *prima facie* correct, and entitled to weight as such unless the defendant produced evidence to show that some other state of facts existed, and that the plaintiffs had not suffered the damages awarded to them by the Commission, and the charge in general terms that it was the duty of the Company to apportion and deliver to the plaintiffs their fair share of all cars available during the period of the action to shippers in the district in which plaintiffs' mine was located, and that if plaintiffs received their full and proportionate share of cars in the district they had no cause for complaint against the Company and the burden was upon the plaintiffs to establish by satisfactory proof that they did not receive their share; nor by other parts of the charge in which the jury was told in general terms that the shipper was entitled to recover the full amount of damages which he sustained, and that in arriving at such damages the jury could only take into consideration whether they had been discriminated against, and to what extent they were damaged by that discrimination, and that, if the Berwind-White Company got 59 per cent. of its output when the average allottable was 28 per cent., it did not necessarily follow that the plaintiffs would be damaged the entire difference between

28 per cent. and 59 per cent., but their damage would be the amount to which their number of cars was reduced in the general allotment by favoring somebody else and taking the cars from them. However correct these general observations may have been, we think it was error in the state of the record to which we have already referred to refuse the specific charge requested.

It is urged that the testimony before the Commission is not all in the record, and that for aught that appears the Commission may have reached its conclusion and awarded damages upon other and competent proofs, and it is insisted that the coincidence of the amount as awarded and the amount ascertained by the use of the percentages contained in the tables may not necessarily have controlled the action of the Commission. But it is difficult to reach the conclusion that the Commission could have arrived at the result so exactly corresponding with the one obtained by the use of the percentages shown in the tables, except by actually using them to ascertain the sum which is exactly the amount resulting from their application. The Commission might have approximated the same result by using other and legal means to ascertain the damages sustained, but when it is demonstrated that the use of the percentages precisely produces the amount awarded to the dollar and cent, it seems almost mathematically certain that the result could have been reached in no other way. At least, we think that the testimony was in such shape that, as we have already said, the Company was entitled to the specific request upon this subject submitting the matter to the jury.

For error in refusing to give this request in the charge, the judgment of the District Court must be reversed, and the case remanded to that court for a new trial.

*Reversed.*

Dissenting, MR. JUSTICE PITNEY.