## UNITED STATES FIDELITY & GUARANTY CO. v. McCARTHY.

### No. 8903.

Circuit Court of Appeals, Eighth Circuit.

May 7, 1931.

Rehearing Denied June 18, 1931.

GARDNER, Circuit Judge, dissenting.

James C. Davis, of Des Moines, Iowa (Jesse A. Miller, of Des Moines, Iowa, on the brief), for appellant.

W. B. Sloan, of Des Moines, Iowa (W. C. Strock and C. S. Bradshaw, both of Des Moines, Iowa, on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

WOODROUGH, District Judge.

This suit was brought by Dr. Wilton McCarthy, a surgeon of Des Moines, for recovery upon an accident insurance policy issued to him by the United States Fidelity & Guaranty Company. The doctor sustained accidental injuries on the 6th day of December, 1922, and claims that the injuries so received resulted in continuous total disability. The insuring company admits the issuance of the policy, that it was in full force on the 6th day of December, 1922, and that the doctor did sustain accidental injuries on that date, but it denies continuous total disability. It paid him the weekly indemnity specified for total disability for the first year after the accident. It then refused to pay further, and the doctor sued and recovered as for total disability for the period from December 6, 1923, to October 22, 1925. The company paid the judgment. Thereafter the doctor brought this suit claiming further continuous total disability from October 22, 1925, up to November 7, 1929. The injury occasioned by the accident was to the doctor's right hand, and it appearing on the trial beyond dispute that the hand was no better than it had been, the doctor contended that the issue as to whether he was totally disabled was the same issue that had been tried between himself and the company in the first suit, and that it was settled in his favor by that judgment. He

also contended that on the whole evidence every fact essential to his recovery had been so established that reasonable minds could not differ as to his right to recover. The trial court sustained his motion to direct a verdict for him on these grounds, and the company appealed from the judgment on the directed verdict. On the appeal, 33 F.(2d) 7, 12, 70 A. L. R. 1447, this court held that it was established by the judgment in the first suit that the doctor, "during the period of time for which indemnity was sought, and at the termination thereof, did, by reason of the injury to his hand, suffer total disability under the terms of the policy; that is, was unable to perform any and every duty pertaining to his occupation as a surgeon." It held further, however, that "the ultimate fact in the previous suit as to disability was total disability during the period for which indemnity was sought. The ultimate fact here is total disability for an entirely separate and definite period of time. That question was not in issue, and could not have been litigated in the former action. Each case stands upon its own bottom." This court then turned to the question of the evidence on the matter of total disability and held that it did not justify a directed verdict for either the doctor or the company, but presented "peculiarly fact questions for a jury." The case was therefore reversed and tried again and the question whether there was total disability during the period covered by the suit was submitted to the jury. There was a verdict in the doctor's favor, and from the judgment thereon the company prosecutes this appeal presenting assignments of error too numerous to discuss in detail.

Aside from the loss of one of his eyes in another accident, and the injury to his right hand involved in this case, the doctor enjoys good health so that the payment to him of $250 a week is, and apparently will be, a much greater burden on the company than if he had been killed or had suffered loss of limbs. The company in its brief before us computes that it may have to pay the doctor some $280,000 if we sustain the judgment and the doctor lives out his expectancy. But on this phase of the case we feel bound by what this court said on the former appeal. It "is of no moment * * * and is not material in this case. * * * It [the company] so wrote the contract."

Neither are any of the assignments relating to the trial court's refusal to take the case away from the jury to be sustained. There is no claim that there was any new evidence on the second trial of a character to justify the trial court in departing from the explicit holding of this court that the questions were fact questions for a jury. There was no dispute about the issuance of the policy by the company nor that the policy was in full force on December 6, 1922, nor that the doctor sustained accidental injury within the coverage of the policy on that date, nor that the injuries so sustained occasioned some disability. There was no dispute that the copy of the policy and the application therefor attached to the doctor's petition as an exhibit were true copies, nor that notice had been given. Nor was there any substantial dispute as to the condition of the doctor's right hand occasioned by the accident. The only question left in the case after the first appeal to this court was as to the extent of the disability during the particular period, and whether it was continuously total within the meaning of the provisions of the policy relied on.

Those the doctor relies on are as follows: His application (expressly made a part of the policy) states: "I am with self—surgeon (only)": "My occupation is surgical practice": "The duties of my occupation are fully described as follows: Surgeon (only)," and the policy says "United States Fidelity & Guaranty Company * * * does hereby insure Wilton McCarthy * * * by occupation Surgical Practice * * * for a weekly accident indemnity of two hundred fifty dollars, * * * Schedule II. Total loss of time. Or, if such injury * * * shall cause continuous total disability, and prevent the insured from date of accident, from performing any and every duty pertaining to his occupation, the Company will pay him the weekly accident indemnity above specified, for the period of such disability."

On the trial from which this appeal is taken the doctor swore as to the direct result of his accidental injury that there was no sensation left in the major part of his right hand, and only the little finger and half of the palm of the hand were really useful so that he could not properly diagnose by two handed palpation nor use the instruments whose use is necessary in surgical practice. That although he had submitted to five operations and long courses of treatment in the attempt to recover the use of the hand, and to fit himself for surgical practice, the hand had become no better, but worse. He described what his occupation in "surgical practice," "by himself," "surgeon (only)," had been for more than nineteen years be-

fore the accidental injury, and declared that he was and had been rendered totally unable to go on with it. He said that he understood too well what the responsibilities of a surgeon are to go back to his office and take his place there. That "you have to deal with life" and he felt all the time, knowing his physical incompetency, that it would be criminal and malpractice for him to attempt to practice surgery. Five of his professional friends corroborated him in practically all of his testimony, and undoubtedly a prima facie case was made.

The theory of the defense is very greatly elaborated by learned and able counsel for the company in its pleadings, testimony, numerous requests for instructions and requests for special findings, assignments of error and forceful arguments. A principal complaint here is that the theory of defense was not fairly submitted to the jury by the trial court.

Admittedly it had to be boiled down for submission to a jury. So analyzing the mass to define the theory we find that it proceeds from the obvious fact that the performance of the duties of every professional occupation includes and presupposes in the professional the exercise of many trained and developed powers. Conspicuously every such occupation includes the duties skillfully to observe, to estimate, to apprehend and to prepare for conditions and to consult with others about them and to resolve upon them preceding, accompanying and following professional action. And in all the professions there are specialists. There are theologians who do not preach, lawyers who try no cases, doctors who administer no potions and surgeons who never incise. Observing that surgical practice in no wise differs from all professional occupations in this general aspect, defendant centered upon a certain number of such incidents of the surgical practice, like diagnosis, consultation, pre-operating and post-operating attention and so forth, and developed that cripples could do those things and some other things and make a living at it, and it contended that the doctor could likewise. By agreement between the parties the doctor called five witnesses besides himself, and so did the company. All of the company's witnesses were crippled, some worse than the doctor, and all professed to be successfully engaged in surgical practice, some phase thereof, and all of them agreed that surgical practice could be carried on by one unable to use instruments. These witnesses contradicted the plaintiff's witnesses as to

what the description, "surgical practice," covered, implying that it did not necessarily include the ability to use surgical instruments or to operate with them on human beings. It was a fair defense and no impropriety is charged in the conduct of it. But however elaborated the defense remained as succinctly epitomized in defendants' answer, "that by reason of the ability of the plaintiff to do and perform many of the duties hereinabove detailed, and many other duties pertaining to the occupation of surgical practice, the plaintiff is not entitled to recover."

The trial court reviewed before the jury categorically all the claims set up in the answer as to what the doctor could do in the way of carrying on his occupation, and the denial of total disability by the company, and its grounds for such denial, and correctly put the burden on the doctor to show his claimed continuous disability during the period involved within the meaning of the policy provisions. As to the meaning of those provisions covering total disability, the instruction was, "Total disability, within the terms of the insurance contract in this case, means inability to do all substantial and material acts necessary to be done in carrying on plaintiff's occupation of surgical practice as distinguished from trivial or incidental acts. It means an inability to perform all the duties necessary to the practical prosecution of said occupation." In giving this instruction the trial court was not moved to use the verbiage because it is particularly choice but solely because another trial court had used the same language and it had been carefully considered and found sufficient by the Court of Appeals in the District of Columbia in Metropolitan Life v. Bovello, 56 App. D. C. 275, 12 F.(2d) 810, 51 A. L. R. 1040. The court also instructed:

"If you find that the plaintiff can perform some trivial, incidental acts connected with the practice of surgery, but is unable to perform any and every material and substantial act in the practical prosecution of the practice of surgery, you would be warranted in finding that he was totally disabled within the terms of the contract in this case. On the other hand, if you find there are any substantial and material acts necessary to be done in carrying on such occupation which the plaintiff could perform during the period in controversy in this suit, then you would not be warranted in finding a total disability within the meaning of the contract of insurance. * * *

"If you find that he was able to perform during this time any of the susbtantial and material duties of his business and occupation as a surgeon, that is, all this time during this period that he was able to do—some of the time during all this time he was able to perform any duty, any material and substantial duty pertaining to the practice of surgery, then you must, of course, return a verdict for the defendant."

Instructions added in colloquy with counsel before the jury added to the clear definition of the issues and the defense as follows:

"Mr. Davis: The defendant asks the Court to instruct the jury on the proposition of partial disability, as defined in the contract; and that even if they find that the plaintiff was permanently injured, but that the disability resulting from the injury was partial only that there could be no recovery in this case.

"The Court: I have certainly instructed the jury as to that: that they find, before the plaintiff can recover, that he is unable to perform any of the material and substantial duties of the practice of surgery. * * *

"Judge Bradshaw: The question in this suit is whether or not he is totally disabled.

"The Court: I think so.

"Mr. Davis: And if he is only partially disabled he can not recover.

"The Court: Yes: we will put that in. If he is only partially disabled he could perform part of the duties of his occupation and part of them he couldn't. Certainly before he can recover he must be unable to perform any of the substantial and material duties of the surgical practice."

The court made no attempt to detail all of the duties of the occupation nor to fix as a matter of law which were necessary or which could be left out. He defined the issue and stated the law and submitted the determination to the jury.

■ Such accident policy provisions have been before the courts time out of mind. It has always been obvious that an absurdly literal construction could be put upon such words as "any and every duty pertaining to my occupation" which would reduce the coverage for total disability to the states of coma or absolute mental and physical helplessness. But the fact that money is paid and accepted for accident insurance under these policies compels attributing good faith to the parties and a construction of the words

used in the policy conformable to an honest intention to indemnify against total inability to practically carry on the occupation specified. The opinion of this court on the former appeal assumed some such reasonable construction or it would have approved an instructed verdict for the company. It appears as plainly on that appeal as it does now that the doctor's injuries were to his hand only and that the doctor's health was good save for the lost eye and the crippled right hand. Accordingly it must be deemed well and firmly settled that such total disability provisions of any accident policy as here presented do not limit recovery to cases of coma or complete helplessness, nor is recovery precluded because the insured gets well enough to follow some other occupation than the one covered by the policy. The trial court correctly stated the defense and the law in its instructions. Metropolitan Life Ins. Co. v. Bovello, 56 App. D. C. 275, 12 F.(2d) 810, 51 A. L. R. 1040; Standard Accident Ins. Co. v. Bittle (C. C. A.) 36 F.(2d) 152; 41 A. L. R. 1376; 51 A. L. R. 1048.

■ The company's requests for instructions and special findings reflect that the company wanted the trial court to split up the issue of total disability and find or have the jury find specially as to things the doctor could or could not do pertaining to his vocation, and it complains here because the trial court refused all such requests. It recurs constantly in its argument to the partial disability clause of the policy which contains the words, "one or more duties pertaining to the occupation," and argues that the two clauses may be read together to its benefit. The clause is as follows: "Partial Loss of Time. Or if such injury shall from the date of the accident or immediately following total disability, prevent the insured from performing one or more material duties pertaining to his occupation. * * *" Obviously the words of this clause, "prevent the insured from performing one or more material duties," like the words of the other clause, "prevent the insured from performing any and every duty," could be absurdly construed to describe a state of helplessness. In a strained sense one flat on his back unable to move is merely "prevented from performing" more duties pertaining to his occupation than the lone duty of thinking about it. But the same assumption of good faith in the parties prohibits the construction, and the courts construe the clause as consistent with honest intention to indemnify against partial disability. Each of the clauses, however, covers

completely its subject-matter. To try to commingle them produces only incoherency. The doctor sued on the total disability provisions, tendered his proof thereon, and the court rightly held that the only issue was total disability vel non under these provisions. There was no error in refusing to split upon the "one or more duties" referred to in the other clause, nor did that clause throw light upon or qualify the meaning of the total disability clause settled and established by the courts in such cases.

■ Complaint is made that an expert witness was permitted to express his opinion on the ultimate issue whether Doctor McCarthy was able to do surgery. All of the reasons upon which the opinion was predicated were fully disclosed by the witness, and if technically objectionable the questions and answers were entirely without prejudice to the company. It was perfectly manifest to the jury that it was the opinion of the doctor and all of his witnesses that he could not carry on his surgical practice by reason of being totally disabled from doing so and that the company's doctors were of the contrary opinion. The testimony could not have prejudiced the company. U. S. v. Phillips, 44 F.(2d) 689 (8 C. C. A.).

Appellant also claims that it took exceptions to a definition of surgery given by the court. The definition was right, and not excepted to. The colloquy was as follows:

"Mr. Davis: If the Court please, the defendant excepts to the definition of surgical practice, limiting it solely to mechanical appliances, as too limited in its character, not sufficiently broad.

"Court: I didn't limit it to mechanical appliances.

"Mr. Davis: Well, I don't think the definition was quite broad enough, if Your Honor please, and the definition was limited to 'surgery' instead of 'surgical practice' as used in the contract.

"Court: I was defining the word 'surgery.' I didn't define the words 'surgical practice.'

"Mr. Davis: Defendant excepts. We believe the court should give a definition of 'surgical practice' as a broader proposition than mere mechanical appliances and including the material duties of surgical practice."

It is clear that what was wanted by defendant was a definition of "surgical practice," not "surgery" and that no error in the definition of "surgery" was called to the

court's attention. As to surgical practice the court told the jury that "they (the company) claimed that the doctor here was insured in his practice of surgery and that the practice of surgery is a little broader than surgery itself. That, gentlemen, is a fact question for you to decide under all the evidence in the case, as you have heretofore been told." The assignment should not be sustained.

■■ Complaint is made that the trial court said nothing to the jury about the duty of the doctor to use good faith in trying to practice surgery. It is sufficient to note that no charge of bad faith in this regard was charged in the company's answer and no issue tendered on the subject. A request for instruction on the matter was included among some twenty-five handed to the court on the trial but there was no error in confining the instructions to the issues made up. Nor could there have been any prejudice from the omission. Whether the doctor was malingering or actually disabled was before the jury every moment of the trial. The jury must have believed that the doctor could not practice surgery if he tried. The word "disabled" carries that implication clearly and unequivocally. To couch the same thought in the terms of duty adds words but no substance.

On the whole case it is evident that reasonable minds may well differ as to whether a man of Doctor McCarthy's physical and mental vigor has been totally disabled for surgical practice. But it has been settled by the jury upon a fair trial most ably contested by counsel on both sides.

The judgment is affirmed.

GARDNER, Circuit Judge (dissenting).

While I am in accord with much that is said in the majority opinion, I find myself unable to reach the conclusion announced therein. I am of the view that the evidence was such that a jury question was presented, and hence there was no error in denying defendant's motion for a directed verdict. Neither do I think any prejudicial error was committed in the court's rulings on the admissibility of evidence.

The answer of the defendant contained a general denial, followed by specific admissions, and then alleged that the plaintiff had not, during the time covered by the complaint, suffered a continuous disability, within the meaning of the policy, and that there were many duties pertaining to the occupation of surgical practice which the plaintiff

had, during the period in question, been able, "if he so desired, to perform; that among other duties as a part of the occupation of surgical practice, the occupation described in the contract of insurance sued on, which the said plaintiff, if he so desired, was and is able to perform are the following:" (1) that the plaintiff is left-handed, using the left hand as dexterously and as efficiently as a normal person uses the right hand, and that "the plaintiff has been, if he so desired, able to perform many operations that are properly connected with and form a part of the occupation of surgical practice;" (2) that as a part of the occupation of surgical practice, a correct diagnosis of the mental, physical and nervous condition of the patient is essential, and that the plaintiff "has been able to diagnose, as a surgeon, a very large percentage of all cases ordinarily arising in the occupation of surgical practice;" (3) that as a part of the occupation of surgical practice it is necessary to advise medical treatment, to the end that an operation may be avoided, and that a proper and essential part of surgical practice includes the care of patients preparatory to an operation and subsequent to an actual operation during the period of recovery; (4) that there is a well-recognized field for a consulting surgeon, to the end that as a result of consultation, the correct diagnosis of the injury or malady might be obtained, and that the profession of medicine includes surgical practice, and in the practice of medicine many duties common to and a part of surgical practice are necessarily performed, and that during the period covered by the action, the plaintiff, had he so desired, was entirely competent and able to perform the essential duties of surgical practice enumerated in the answer.

It was the contention of the defendant that there were many material and substantial duties of the profession of surgical practice which plaintiff could still perform and that the term "surgical practice" as used in the contract of insurance, was not limited to the performance of manual operations. This contention was distinctly, definitely, and persistently asserted by the defendant in its answer, by the character of the evidence offered, by the instructions requested, and the objections interposed to the instructions as given. In the majority opinion, in referring to the duties of professional occupations, it is said:

"Conspicuously every such occupation includes the duties skillfully to observe, to estimate, to apprehend and to prepare for conditions and to consult with others about them and to resolve upon them preceding, accompanying and following professional action. And in all the professions there are specialists. There are theologians who do not preach, lawyers who try no cases, doctors who administer no potions, and surgeons who never incise."

It is observed, however, that the lower court did not so advise the jury, but instructed the jury as follows:

"In that connection, the use of the word 'surgery' is made and the law and the dictionary give to that word a meaning, which while it is differently stated, the definitions are practically the same. Here is one of them that I think is practically the same as the general one: Surgery is a branch of medical science. It is limited to manual operations usually performed by surgical instruments or appliances.

"I don't know as the defendant here complains as to the definition of the word 'surgery' but they claim that the doctor here was insured in his practice of surgery, and that the practice of surgery is a little broader than the word surgery itself. That, gentlemen, is a fact question for you to decide under all the evidence in the case, as you have heretofore been told.

"Now, in this case, gentlemen, the plaintiff was insured against disability from performing the duties of his occupation as a surgeon. * * *

"If you find that the plaintiff can perform some trivial, incidental acts connected with the practice of surgery, but is unable to perform any and every material and substantial act in the practical prosecution of the practice of surgery, you would be warranted in finding that he was totally disabled within the terms of the contract in this case. On the other hand, if you find there are any substantial and material acts necessary to be done in carrying on such occupation which the plaintiff could perform during the period in controversy in this suit, then you would not be warranted in finding a total disability within the meaning of the contract of insurance."

Exceptions were saved to these instructions and counsel for defendant urged that the instructions in effect limited surgical practice solely to the use of mechanical appliances, and that the definition was a definition of surgery, instead of surgical practice as used in the contract of insurance. It is significant that while the contract of in-

surance designated the plaintiff's occupation as that of surgical practice, yet the court gave a technical definition of surgery as a branch of medical science limited to manual operations. Immediately following this instruction is, first, a suggestion that the court does not know that the defendant complains as to the definition of the word "surgery," but that it was claimed that surgical practice was a little broader term, and this issue is submitted in two lines as follows:

"That, gentlemen, is a fact question for you to decide under all the evidence in the case, as you have heretofore been told."

Then, immediately following this instruction, the jury was instructed that the plaintiff was insured against disability from performing the duties of his occupation "as a surgeon."

It must be borne in mind that these instructions were orally given to a jury of laymen, whose only opportunity of ascertaining the law applicable to the facts and issues submitted to them, was from hearing the instructions orally given by the judge. They were not lawyers nor surgeons, nor did they have an opportunity critically to analyze and examine all the instructions. They were here told, in a very striking way, that surgery was limited to the performance of manual operations. They were also told, in very plain, definite language, that the plaintiff was insured against disability from performing the duties of his occupation "as a surgeon." With these definite and easily understood instructions, the jury must have understood that if the plaintiff's injuries were such as to prevent him from performing manual operations, then he was entitled to recover, as the court had plainly stated that surgery was so limited, and that he was insured against disability from performing the duties of a "surgeon." Why define surgery, and why state that the plaintiff's occupation was that of a surgeon unless it was the purpose of the court to limit the term "surgical practice" to the technical term "surgery" as defined by the court? This was tantamount to instructing the jury to return a verdict for the plaintiff.

True, there were some other instructions, which, if carefully analyzed and examined by a lawyer, might have conveyed the idea that if the jury found that there were other substantial and material duties pertaining to the occupation of surgical practice, and that the doctor, notwithstanding his injury, could perform such material and substantial duties, he would not be entitled to recover. But the most that could be said about these instructions, when it is considered that the jury heard them but once, is that they were inconsistent with the ones above referred to, and as compared with the simple instructions with reference to surgery, they were complicated and difficult to comprehend.

Again, it is noted that the court volunteered the suggestion that it did not know "that the defendant complains of the definition of the word 'surgery,' but that they claim that the plaintiff was insured in his practice of surgery, and that the term 'practice of surgery' is a little broader than the word 'surgery.'" Now, no definition was attempted of the term "practice of surgery," and the statement that the defendant may have been complaining or taking issue with what the court said in its instruction, placed the defendant in the light of antagonism to the court and the court's views. The instruction then becomes an argument against the defendant, rather than a statement of law to be applied to the concrete facts. The definition of surgery, as given by the court, suggested that surgical practice implied, of necessity, the ability to perform manual operations.

The defendant requested instruction number 3, which is as follows:

"The occupation covered by the policy, and for which the plaintiff was insured, is surgical practice. Surgical practice means the general practice of surgery by one authorized by law to engage in such occupation, under the ordinary circumstances in which a surgeon follows such occupation, and applies to one skilled in the knowledge of medicine and surgery. The occupation of surgical practice is not limited solely to the performing of manual operations, but includes all material duties, as disclosed by the evidence, involved in the occupation of surgical practice."

The defendant also requested another instruction still more pointed and specific, submitting to the jury its claim that there was included within the term "surgical practice" more than the performance of manual operations. This was the battle ground on the trial of this action, and the issue which the defendant endeavored to have definitely placed before the jury as a question of fact.

In objecting to the instruction which refers to the ability of the plaintiff to perform some trivial, incidental acts connected with the practice of surgery, counsel for the defendant called the court's attention to the fact that it had not instructed the jury with

particularity as to the material duties of surgical practice, such as diagnosis, medical attention, consultation and group practice, and that under the evidence all these duties were material to surgical practice, and the defendant requested the court to give a well defined instruction as to these material duties, in accordance with the instructions requested by the defendant. This the court declined to do. In this connection the defendant requested the following instruction:

"If the jury finds that diagnosis of a patient's condition is one of the material duties of the occupation of surgical practice, and that during the period sued for Dr. McCarthy could have properly diagnosed a substantial number of surgical cases, then, if you so find, your verdict should be for the defendant."

The defendant also requested the following instruction:

"If the jury finds that medical treatment of a patient prior to an operation, for the purpose of preparing the patient for an operation or for the purpose of avoiding an operation, is one of the material duties of the occupation of surgical practice, and that during the period sued for Dr. McCarthy could have given such medical treatment in a substantial number of surgical cases, then, if you so find, your verdict should be for the defendant."

A similar instruction was requested with reference to consultation with other physicians and surgeons for the purpose of diagnosing a case and determining the character of operation. These were all denied, and nowhere in the instructions were these questions definitely and concretely presented to the jury; in fact, the court, in reply to the defendant's request, at one place said, "That's your theory about it." Apparently, the court was of the view that the defendant was not entitled to have its theory presented to the jury. These defenses were properly pleaded, and there was evidence in the record, which, if believed by the jury, would have warranted it in finding that diagnosis of a patient's condition, medical care of a patient prior to operation for the purpose of preparing the patient for operation, or for the purpose of avoiding an operation, medical care and treatment of the patient after an operation, and consultation with other surgeons and physicians for the purpose of properly diagnosing surgical cases, were all material duties of the occupation of surgical practice, and there was also evidence in the record, which, if believed by the jury, would have warranted a finding that the plaintiff could have performed substantial services of this character.

I agree with the statement in the majority opinion that, "A principal complaint here is that the theory of defense was not fairly submitted to the jury by the trial court." The instructions were general and it cannot now be determined from the verdict whether the jury directly passed upon these questions, vital to the defense in the case; and in a case of this importance, dealing as it did almost exclusively with expert testimony, it was of the utmost importance that the questions involved be pointedly, concretely, and distinctly submitted to the jury.

It has long been the rule of this court that where defendant requests instructions on the concrete, crucial questions at issue, it is error to refuse such request, even though the questions may be covered by a general charge. Western Union Tel. Co. v. Morris (C. C. A. 8th) 105 F. 49, 53; Northern Central Coal Co. v. Hughes (C. C. A. 8th) 224 F. 57, 59; American Smelting & Refining Co. v. Riverside Dairy & Stock Farm (C. C. A. 8th) 236 F. 510; Bates County v. Wills (C. C. A. 8th) 239 F. 785, 794; Wisconsin & Arkansas Lumber Co. v. Day (C. C. A. 8th) 35 F.(2d) 563. See, also, Aetna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Kaufman Department Stores v. Cranston (C. C. A.) 258 F. 917; Pennsylvania R. Co. v. W. F. Jacoby & Co., 242 U. S. 89, 37 S. Ct. 49, 61 L. Ed. 165.

The rule is forcibly stated in an opinion by the late Judge Sanborn in Western Union Telegraph Co. v. Morris, supra, where it is said:

"In support of the rulings of the court counsel for the defendant in error invoke the rule that it is not erroneous for the trial court to refuse to give instructions to the jury in the language of the attorneys when the substance of the instructions is embodied in the general charge of the court. The soundness of this rule is conceded, but its applicability to this case is not admitted. It may be that the substance of some of the requests can be deduced from the general charge of the court by a careful and painstaking process of reasoning. * * * But this conclusion is a deduction from a careful study of the written charge and an extended process of reasoning. The jury had no opportunity to study this charge in this way. They did not read it at all, and heard it but once. It is plain that it did not as clearly present to those who heard

it the real issues as did the requests for instructions which formulated them. A single delivery or reading of this general charge probably would not at once present to the minds of all who heard it the crucial questions in this case, while the submission of the instructions requested which clearly stated those issues and applied the law to them would have been sure to do so. * * * General charges of this character often fail to present to the minds of those who hear them but once, and have no opportunity to carefully read and study them, the actual issues which they are to decide. A plain statement of the actual issues left for the jury to decide at the conclusion of the evidence, and an application of the law to those very issues in the charge or the instructions of the court, is more helpful to the jury, and far more conducive to the administration of justice, than an abstract statement of the legal propositions which govern the case.

"The counsel for the plaintiff in error requested the court to give to the jury instructions which tersely and fairly presented the crucial questions in this case to the jury. The general charge did not so submit them, but left the jury to eliminate them from the mass of evidence and argument, to apply a general statement of the law of probable cause to them, and then to decide them."

The same principle is discussed in Northern Central Coal Co. v. Hughes, supra, where Judge Sanborn, speaking for this court, said:

"The refusal of the court to give the instruction requested, therefore, violated the salutary rule that where the charge of a court states general rules of law governing the case, but fails to set forth the specific issues which the jury is called upon to determine and to apply the law to them, either party upon request is entitled to additional instructions which tersely and clearly state the crucial issues which the jury must determine and the law applicable to those very issues."

In the later case, Bates County v. Wills, supra, heard before Judges Sanborn, Adams, and Carland, it was said:

"It is a general and salutary rule that where a charge states general rules of law governing the case, but fails to set forth a specific and crucial issue which the jury must determine, and to apply the law to that issue, either party, upon request, is entitled to additional instructions which tersely and clearly state such issue and the law applicable

thereto. The refusal to submit the required instruction was in our opinion a violation of that rule and fatal to the trial of this case."

But the rule is not peculiar to this court, but is generally recognized in all jurisdictions. Wherever the attention of the jury is not directed to the crucial points on which the liability or nonliability of the defendant depends, then it is error to refuse a requested specific charge on such points. It is not possible to determine, under the general charge given the jury in the instant case, whether the jury considered the issue that plaintiff could perform the duties of his profession of practicing surgery in connection with diagnosis or treatment of the patient after operation, or whether the jury considered the issue that these duties constituted material, substantial duties of plaintiff's profession. The defendant's requested instructions pointedly directed the jury's attention to these crucial questions, and it had a right to have the jury instructed so clearly and pointedly as to leave no ground for misapprehension or mistake. I am, therefore, of the opinion that the court erred in refusing to give, in substance at least, these requested instructions.

It is common-place to say that in giving or refusing instructions, the court should not ignore either an issue presented by the pleadings and the evidence, or a ground of liability, or a proper defense. Neither should the court give any instruction which may cast discredit or suspicion on a legitimate defense, and a party is entitled to have instructions given on his theory of the case if supported by evidence. Chicago, M. & St. P. Ry. Co. v. Voelker (C. C. A.) 129 F. 522, 70 L. R. A. 264; Watjen v. Louisville Tobacco Warehouse Co. (C. C. A.) 294 F. 264.

The defendant also requested an instruction to the effect that it was the duty of the plaintiff in good faith to use reasonable, persistent effort to overcome whatever disability he suffered as the result of his accident, and to do and perform all material duties of his occupation of surgical practice that by good faith and persistent effort he would be able to perform. Two instructions were requested, presenting in substance this question, both of which were denied. It has already been observed that the plaintiff was a left-handed man and that his injuries were confined wholly to his right hand. On cross-examination he admitted that since his injury he had made absolutely no effort to perform any material duties of his profession. This

court on the former appeal said [33 F.(2d) 7, 12, 70 A. L. R. 1447]:

"We do not think a presumption should be indulged that a highly educated, intelligent, and healthy surgeon by virtue of an injury to his hand such as is here shown could not practice any substantial part of surgery at any time in the future because it had been determined that for some particular period he could not so do. *Disability is not entirely a physical matter. Will power and condition of mind enter into it.* [Italics mine.] A person may be disabled today, and in a year from now, without any change in the physical condition, not be disabled. A one-handed man may not be able to perform surgery to-day, and in a year from to-day may have overcome to some extent his disability and be able to perform some part of the substantial duties of a surgeon."

It is suggested in the majority opinion that, "No charge of bad faith in this regard was charged in the company's answer and no issue tendered on the subject." I think this statement is scarcely warranted by the record. The defendant specifically pleaded at least half a dozen times that if the plaintiff desired to perform the substantial duties of his profession which were set out in the answer, he could have performed them. The burden of proof was on the plaintiff to prove that he was totally disabled from performing all the substantial duties of his profession, and it was specifically charged that if he had desired so to do he could have performed them, so that it seems that the requested instructions on this question went to the issue presented by the pleadings and the evidence, and that it was, under the law of the case as established by the former opinion of this court, a material issue which should have been submitted to the jury. As said by the Supreme Court of Kentucky in Aetna Life Ins. Co. v. McCullagh, 191 Ky. 226, 229 S. W. 1033, 1035:

"A recovery for total disability cannot be sustained under circumstances such as are disclosed by this record where the policy holder contents himself with the statement of his inability to perform that which he has never attempted to do."

Other instructions requested cover substantially the same grounds in different words, and the defendant was entitled to have this issue submitted to the jury.

The instructions as a whole did not purport to call distinctly to the jury's attention or require a definite verdict upon the crucial questions involved and did not fairly present the vital, concrete issues, nor the theory of the defense in this case. The judgment should, therefore, be reversed and the cause remanded, with directions to grant a new trial.