STATE OF NORTH DAKOTA, FOR AND ON BEHALF OF NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU et al. v. NORTHERN PAC. RY. CO.

No. 13777.

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1948.

Rehearing Denied Jan. 25, 1949.

Lanier & Lanier and E. M. Stern, all of Fargo, N. D., for appellants.

Conmy & Conmy, of Fargo, N. D., for appellee.

Before SANBORN, THOMAS and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

Edward J. Hanish, an employee of the Noel Construction Company, a road build-ing contractor, brought suit, as plaintiff, in the district court against the Northern Pacific Railway Company for damages for personal injuries caused by the alleged negligence of the defendant. The State of North Dakota appears as a party plaintiff to protect its right of subrogation pursuant to the Workmen's Compensation Laws of that state. R.C.1943, 65-0101 et seq. At the conclusion of plaintiff's case the defendant moved the court to direct a verdict in its favor on two grounds, viz., (1) that the testimony showed that the negligence of the plaintiff Hanish was the sole cause of his injuries, and (2) that there was no proof of any negligence of the defendant. The motion was sustained, judgment was entered dismissing the action on "the merits and with prejudice to the plaintiff", and this appeal followed.

The accident in which plaintiff Hanish received the injuries for which he seeks damages occurred on September 4, 1947, about two miles west of the town of Sterling, North Dakota, where a highway running in a northwest-southeast direction crosses the east-west tracks of the defendant railway company. At that point there are two railroad tracks, the north one being the main line and the south being a passing track. Looking east from the crossing one can see an approaching train first as it comes round a curve at a distance of 1,200 feet.

On the date named Hanish was moving a dragline machine in a northwest direction across the tracks when a freight train approaching from the east struck the rear end of the machine and Hanish was injured.

The dragline machine operated by Hanish is a heavy machine used for excavating earth or gravel and removing the spoil and dumping it in piles or loading it on vehicles. It consists of a revolving body on a crawler base frame. The body includes a cab in which the power machinery and the operator are housed. A crane or boom approximately 30 or 35 feet in length to which a shovel is attached projects from the front of the cab. The top of the cab is about 10 feet above the ground, and the overall length of the machine is about 45 feet. When at work or moving along the highway the operator is seated on a pivoted

seat in the cab within reach of the controlling levers. At his left and in the rear end are doors through which he can see and through which he can enter or depart. To see out of the rear door it is necessary for him to turn on the pivoted chair and take a step or two to the rear. The maximum speed of the machine when moving from one place to another is about two miles an hour.

The facts and circumstances relating to the accident on September 4, 1947, were told by Hanish. He testified that he was 40 years of age; that he had been an operating dragline engineer continuously for 10 years with five years' preparatory service as an apprentice and oiler. It is the business of an oiler to go along with the engineer on a dragline machine as an assistant. At the time of the accident he had been working for the Noel Construction Company about two years as dragline engineer. On the morning in question he received orders to move the machine from a clay pit south of the railroad to a gravel pit north of the defendant's tracks. When he approached the crossing he sent his oiler across the tracks ahead of him to stop approaching traffic coming from the north until he got across with the machine. He could see out of the rear of the cab to the south. When he approached the tracks he stopped when the front end of the crane or boom was about 8 or 10 feet south of the passing track. The front or shovel end of the crane was then about 8 feet above the ground, and the cab about 45 feet south of the track. He got out of the cab and walked around to the front end of the crane. The oiler was on the north side of the tracks opposite Hanish and the machine. Hanish then looked both ways, did not see or hear any train and saw no smoke. He walked back to the cab, looked both ways again, saw nothing and got into the cab through the door on the left side, and immediately started the machine. He looked ahead and saw the oiler standing there on the north side of the tracks. As he was almost across the "oiler threw up his hands and his mouth came open", and Hanish then knew he was in trouble. He could not see out of the right or east side of the cab, so he pivoted on the seat, looked out the back window of the cab and saw the head of a locomotive approaching from the east approximately 75 feet distant. He immediately turned to the door and jumped, but was struck and injured. He was asked:

"Q. When that machine is in motion, running, does it or not make any noise? A. Yes, it does * * * There is a continual explosion of exhaust and then there are a lot of gears that are grinding as it is rotating.

"Q. Are you in a position to say whether or not that noise would interfere with your hearing a whistle down the track, say a quarter of a mile away or 1,200 or 1,000 feet? A. I couldn't hear it * * * You could not hear a whistle. The noise was tremendous."

On cross-examination he testified that before starting across the railroad tracks he did not send any one to stop trains; that he knew that it took quite a while to get the machine across the tracks; that he did not know what kind of a train hit him or anything about it; that from the time he started the machine from its position about 50 feet south of the main line track he did not look for an approaching train until he saw his oiler throw up his hands and appear frightened. He could have looked before that had he pivoted on his chair and looked out the back door of the cab, but he did not do so. Had he looked and seen the engine at a distance of 200 feet he could have jumped out of the rig and escaped any injury.

Alfred Jensen, a witness of the plaintiffs, testified that he arrived at the scene of the accident about 30 minutes after it occurred; that the dragline machine was then lying 75 to 100 feet from the intersection of the highway and the railroad; that a freight train was stopped there and that he counted 30 cars and the locomotive which had passed the crossing to the west side thereof.

The oiler assisting Hanish was not called as a witness.

The complaint charged negligence in the following language: "Plaintiffs allege that when defendant's train was at a point about one-half mile away from the intersection where the accident occurred, the engineer

.in charge of said train or engine could see, or by the exercise of ordinary care, should have seen, the big, unusual, unwieldly dragline machine on the tracks and plaintiff in a place of eminent [imminent] peril, in time to have avoided said accident, by the exercise of ordinary care; that defendant negligently ran its train into the said machine and injured plaintiff Edward J. Hanish * * * "

The defendant in its answer denied negligence generally and alleged that Hanish's injury was caused by his own negligence and that his own negligence contributed thereto.

In this court the plaintiffs contend that the case should have been submitted to the jury upon two theories: (1) that the defendant was negligent in that the crossing where the collision occurred was inherently dangerous requiring the defendant's train to come round the curve east of the crossing under control sounding warnings of its approach; and (2) that the case should have been submitted on the doctrine of the last clear chance.

■ The first of these contentions is without merit for two reasons. First, the burden was upon the plaintiff to make a prima facie case, and there is no evidence in the record to the effect that the engineer in control of the locomotive failed to sound the whistle and give the usual warnings as he approached the crossing; and, second, the complaint does not allege that the crossing was inherently dangerous, requiring any extraordinary precautions in the operation of trains over it. It is familiar law that an issue not pleaded cannot be submitted to a jury. A plaintiff cannot complain of one thing and recover for another. Grady v. St. Louis Transit Co., 8 Cir., 169 F. 400; Grand-Morgan Theatre Co. v. Kearney, 8 Cir., 40 F.2d 235; Union Pac. R. Co. v. Garner, 8 Cir., 24 F.2d 53; United States Fidelity & Guaranty Co. v. McCarthy, 8 Cir., 50 F.2d 2; Mutual Ben. Health & Accident Ass'n v. Warrell, 8 Cir., 96 F.2d 447; Garland v. Davis, 4 How. 131, 45 U.S. 131, 11 L.Ed. 907.

We shall discuss the charge of defendant's negligence further below.

■ Jurisdiction is predicated upon diversity of citizenship of the parties and the amount involved. The issues are controlled, therefore, by the law of North Dakota where the cause of action arose. In cases such as this, under the law of that state, the burden is upon the plaintiff to establish negligence of the defendant, Stelter v. Northern Pac. Ry. Co., 71 N.D. 214, 299 N.W. 310, whereas the burden is upon the defendant to prove contributory negligence of the plaintiff. Schnell v. Northern Pac. Ry. Co., 71 N.D. 369, 1 N.W.2d 56. Questions of the negligence of either or both parties are primarily questions of fact. Such issues present a question of law for the court to decide only when the evidence is such that but one inference can fairly and reasonably be drawn therefrom. Wilson v. Oscar H. Kjorlie Co., 73 N.D. 134, 12 N.W.2d 526; Bratvold v. Lalum, 68 N. D. 534, 282 N.W. 514; Haugo v. Great Northern R. Co., 27 N.D. 268, 145 N.W. 1053.

In the Stelter case, supra, the plaintiff sought to recover damages resulting from a collision at a crossing between a motor vehicle driven by plaintiff and a gasoline motor train operated by the defendant railway company. The court there quoted with approval the following statement of the last clear chance doctrine from the decision of the Supreme Court of North Dakota in the case of Acton v. Fargo & Moorhead Street Ry. Co., 20 N.D. 434, 129 N.W. 225, 231: "Both parties being negligent, the true rule is held to be that the party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it. It is well settled that a plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was proximately caused by the defendant's omission (after becoming aware of the plaintiff's danger), to use ordinary care for the purpose of avoiding the injury to him." [71 N.D. 214, 299 N.W. 313.]

In the Acton case the plaintiff while seated in a buggy on a street in the city of Fargo was struck and injured by a street

car approaching from his rear. He brought suit for damages relying upon the doctrine of last chance. The Supreme Court approved an instruction to the jury which states that "if the defendant or its employes in charge of the car were aware, *or should by the exercise of reasonable diligence and care have become aware*, of the dangerous position of the plaintiff, in time to have, by the exercise of reasonable diligence and care, avoided the collision with the buggy of the plaintiff, that the prior negligence of the plaintiff would not bar his right to recover in this action." (Emphasis supplied.)   129 N.W. at page 228.

■■   In sustaining the defendant's motion to dismiss the complaint the court did not indicate whether he based his order upon failure to establish negligence of the defendant or upon contributory negligence of the plaintiff or both. The circumstances would support a finding of contributory negligence. The plaintiff knew that the dragline machine which he was operating was at least 45 feet in length and that it moved very slowly. He knew, or should have known, that as between the train and himself the train had the right of way. Schnell v. Northern Pac. Ry. Co., supra; State ex rel. v. Great Northern Ry. Co., 54 N.D. 400, 209 N.W. 853. From his position in the cab he could not see a train approaching from the east without turning on his seat and looking out the rear door of the cab. Because of the noise of the machinery he could not hear a train whistle. Because of the curve in the tracks a train could not be seen until it was within 1,200 feet of the crossing. He did not look until the locomotive was within 75 feet of the crossing. Had he looked when it was 200 feet distant he could have escaped uninjured. Neither did he instruct his oiler to look out for or to signal an approaching train. He cannot say that he did not see when had he looked when he could he would have seen. Schnell v. Northern Pac. Ry. Co., supra.

■■   Assuming without deciding that a jury would have been warranted in finding that plaintiff was not negligent in failing to look out for an approaching train after he started his journey across the defendant's tracks with the dragline machine, then the question remains whether the defendant was liable under the doctrine of the last clear chance, as that doctrine is defined by the Supreme Court of North Dakota in the Stelter case supra. Although, in considering a motion to dismiss, the evidence must be viewed in the light most favorable to the plaintiff, the jury cannot be permitted to speculate, surmise or guess as to the facts bringing the doctrine of last clear chance into play. Stelter v. Northern Pac. Ry. Co., supra; Griffin v. St. Louis Transfer Ry. Co., Mo.Sup., 193 S.W. 807, 810. The law of North Dakota is that a plaintiff cannot say that he was in a position of peril, within the last clear chance doctrine, when by the exercise of reasonable care for his own safety, all danger might have been avoided. In such a case the chain of causation extending from the original negligence is broken by the independent subsequent negligent act of the plaintiff. State ex rel. v. Great Northern Ry. Co., supra, 209 N.W. at page 859. In the Stelter case the court said: "In order for it [the last clear chance doctrine] to apply, not only must the defendant have been aware of the plaintiff's peril but it must also appear that the engineman could, by the use of the means at hand under the circumstances then existing, having due regard to his own safety and the safety of others, have avoided injuring the plaintiff." And the court observed that the burden was upon the plaintiff to prove that the engineer, under all the circumstances found to exist, could have stopped the engine in time after becoming aware of plaintiff's peril to have avoided the collision. The court further observed that there was no testimony in that case as to the distance within which the train could have been stopped, and a judgment for the plaintiff was reversed.

We have been cited no decision of the Supreme Court of North Dakota in any way inconsistent with the decision in the Stelter case, and we think it is controlling here. There is no evidence in the instant case as to the number of cars in the train, or of its speed or of the distance within which the engineer could with safety have stopped the train. Neither is it clear at

what point the engineer should in the exercise of ordinary care have become aware of plaintiff's peril. The plaintiff argues that the engineer should, in the exercise of due care, have become aware of plaintiff's perilous situation the instant he turned the curve 1200 feet from the crossing. This contention is clearly speculative. To support it one must conclude that at that moment he could see and comprehend the entire situation; that he knew that the rear end of the dragline machine was still on the track and that it was moving very slowly. But there is no evidence to support this assumption. The machine was 45 feet long and most of it was already over the tracks. A man, the oiler, was standing on the north side of the tracks, and there is no evidence that he gave any signal indicating danger or that the machine obstructed the tracks in any way.

Considering all the evidence in the light most favorable to the plaintiff, the contention that the collision was the result of the lack of care of the engineer in charge of the train is based wholly upon speculation and surmise and not upon the testimony in the record. The judgment appealed from must, therefore, be, and it is

Affirmed.